May it please the court. My name is Hunter Windham and I represent Mr. Eichin, the appellant in this case. Mr. Eichin asked that the court reverse the district court's order granting it the Ethicon Entity Summary Judgment and denying his motion to extend the expert disclosure deadline for two reasons. First, the district court fundamentally misunderstood the factual record before it and abused its discretion in that way. It thought that Mr. Eichin actually knew the identity of the product in December of 2023, four months before the deadline. Also, the district court misread sort of the how long this case was sort of before it. The second point is that the district court looked under Federal Rule of Civil Procedure 16 instead of the more specific rule, Rule 6, in analyzing whether to grant Mr. Eichin's motion to extend his expert deadline. Can I briefly ask you about the first one? How does the district court err in clearly finding that you didn't know something until a certain date when you specifically told the district court you found out about it on that very date? I think, your honor, that that mistake was ultimately corrected in the papers before the district court. So a district court is supposed to track when parties take back things they previously represented to the district court and clearly error when they don't do that? I think that in two places, your honor. I think one in JA 306 and sort of this response to the opposition from Ethicon. I think that they get into more detail on that sort of misstatement. I mean, would you like me to directly quote JA 288 and what you told the district court and how it exactly mirrors exactly what the district court found that you now claim was clearly erroneous? And, your honor, I think that you're exactly correct. That is a misstatement, 100%. But I think there are two instances also in that response and then also I think even in later in sort of the motion for reconsideration that was filed. I think it's very clear that Mr. Eichin's telling the court that, you know, we did not know the exact product identity until March. In that motion to reconsider, I think Mr. Eichin says, you know, to not allow the appellate to have any meaningful opportunity to prosecute his claim after finding out just the manufacturer's name in December will constitute a manifest injustice. So let's assume for the sake of argument that when you knew the actual stapler somehow matters. Why in the world does knowing the exact model of the stapler have anything to do with whether you would obviously need an expert witness in this case? I think for sure we knew from the get-go that we need. And you made no effort to get an expert? Like why can't you get an expert witness before you know what the stapler is? I don't understand how you can't get an expert until you know the exact stapler. So I think maybe that's some insider baseball as far as the experts go. I mean each one of these difficult products cases, trial counsel will reach out to the experts that they have that maybe they've used before that maybe they think they're going to need and in this case that's what happened. Experts were contacted beforehand and they were sort of on standby in a sense. These experts, they're not going to agree to be an expert in your case until you have certain information. So you're representing that you have stapler specific experts? This is the expert for this stapler model and I have a totally different expert for a slightly different stapler model made by the same company? Not stapler specific models, your honor, but I do think that typically whenever an expert and I think the rules sort of consider this both in rule 26 and then I think even in sort of the district court scheduling order often, when you identify an expert oftentimes it's sort of you accompany that with the at least initial report of the expert and for the experts they really can't do much at all until they know what that model number is. Okay great, so let me ask the next question. You obviously knew before the scheduling order deadline ran that you did not have an expert who was not going to submit an expert report on the date that expert reports were due and you just let that deadline run without asking. I mean it feels like this would a great thing to say to the district court, dear district court, please modify the scheduling order to give us more time. But what you instead did is you just let it run. The deadline did run, your honor. I do think it's important that it only ran by 20 days. You keep using the word, okay, so now unfortunately your brief says that over and over again. I don't understand a sane world of litigation in which only is a word that you can apply to missing a deadline by nearly three weeks. Well I think it's important. Only is like it was due at 5 and I only got it in at 505. Only maybe is it was due on Thursday but I got it in on Friday. I don't know any world in which it's useful in the litigation context to describe 20 days as only 20 days. I think it's important to sort of look at sort of the context of this litigation, your I mean you know 20 days here in this litigation is a very very short time and oftentimes these product cases are much more difficult. I guess what I'll tell you is that every single person who's ever worked for me and almost every person I've ever worked for would say if you're going to miss a deadline you have to ask for more time before you miss the deadline. It is completely unacceptable to just blow off the deadline and then ask to be excused a bit later. I mean maybe if you had some really compelling reason like I was hit by a bus and I was in a coma or something like that but like you can't just miss the deadline and then when someone points out that you missed the deadline say well I'm sorry I was having a hard time and I just didn't get to like. But your honor I think that's the purpose of sort of the rules that we're looking at here is it's not just you know you missed the deadline that's it. I mean under either standard you look at I mean there's going to be a factor analysis and I think that for sure the reason for that delay you know that is one of those factors that kind of depends which rule you're following or whether it's a little bit more or less important but it's ultimately a factor test and I think here what it looks like is the district court sort of took that one factor and just kind of ran with it instead of looking at some of the other factors and I think that on remand if the district court knew or just if it's obvious before this court you know based on hey it's just 20 days they really actually didn't know what the product number was. Now they know that both the manufacturer and the product number for the first time and I really don't think there was any real way of knowing at that point in time what the product number was. Discovery had been issued. At what point in time was there no way of knowing? I think that until March 18th of 2024 your honor the Mr. I can really. So January's when the depositions happened right when the doctor who actually used the stapler sat in front of counsel and answered any questions that they had for him. And I don't think at the doctor's depositions I think it was possible for sure that maybe at that point it could have been. So it's not that there was no way to know before March 18th? You could have found out in January? I say possible in the sense that I think the hope was at that point these doctor's depositions are going to clarify. I don't think that's actually what happened despite the questions being asked. At page 18 of Ethicon's brief they talk about there was detailed testimony provided by both doctors as to several. You can ask a follow-up question right and get that specific answer if you need it. Another great opportunity might have been to file these discovery requests earlier. Right? Was there any reason why Mr. I can couldn't ask for these responses before his deadline for product identification had already passed? I think that he was hoping that the doctor's depositions would finally clarify it at least that's my understanding. And then when they didn't, then he issued the discovery request. As far as those doctor's depositions, I do think those more detailed follow-up questions were asked, Your Honor. I mean I think at J216 you look specifically, you know, they're asking the doctors about the different staplers because there was still, there was a Covidian stapler that that may have been used in the surgery. And Covidian, there were several defendants that were Covidian and or Medtronic that had manufactured those. And the doctor said themselves, look like we have several staplers in the room with us. We use the Covidian and the Ethicon staplers interchangeably. And so we don't know exactly, you know, which stapler it was that was used. We can sort of tell you the color and kind of the curvature on it. But, you know, we don't know the exact product. Can I just ask you to address a big picture? So the district court literally said to you in the first scheduling order, take this scheduling order seriously. This is not, I'll just quote it, it's not a frivolous piece of paper idly entered which can be cavalierly disregarded. I just get this feeling that the entire course of litigation by the district court's deadlines is sort of suggestions that should be met if it's easy to do so, but not a big deal if not. I think that would be a mischaracterization, Your Honor. I think one thing that sort of suggests otherwise is, you know, yes, we're on the fifth scheduling order whenever this sort of comes to a head or all of this, these orders before. But at that point in time, all of the parties had agreed to a consent motion to extend the scheduling orders up until that time. Up until that time. Great, you could have approached opposing counsel and asked for another consent motion instead of just blowing the deadline by 20 days. That's a fair point, Your Honor. But I do think it, at this point in time, the understanding was, I think some of the backdrop too was, finding that stapler, there's a lot of discovery that maybe did not make its way into the record because it was informal discovery. Grand Strand Regional Medical Center was the hospital where Mr. Eichen had the surgery and they weren't actually a party to the case, but a good bit of the discovery that did take place was informal discovery to Grand Strand. By the way, their attorney, Will Thomas, and they had an attorney before that. And I think that Grand Strand ultimately was the entity that the parties, especially at least Mr. Eichen, was sort of looking to for most of the information as far as, you know, how do I figure out which exact staplers were in the room at that time? And for whatever reason or not, there was some sort of delay and difficulty getting to Grand Strand, getting that information. Can I take you to the Rule 6 versus Rule 16 question? So my understanding is that you're arguing that Rule 6 is narrower. That's your argument why 6 controls or 16, or it's part of your argument anyway? I think that's part of the argument. I think also... How can that rule possibly be narrower when it begins with the words in general? I think it's also just more specific in a sense, more narrow. It's sort of... Really one of these rules is about scheduling orders and one of them is not. But I think that Rule 6 also, it's about when an act must or may be done. And I think that's exactly what we're sort of looking at here is, hey, you've got to make your expert witness disclosures, you know, by this time. And I think that's the operative language of Rule 6. Now, I'll give you that we're in a scheduling order. I mean, the district court has taken... And Rule 16 is like labeled scheduling orders. It does say scheduling order in that rule. But I also think if you look at sort of where the expert witness disclosure deadlines come from originally, they are in the more general federal rules. So can I ask you to respond to your friends on the other side, cite Professor Gensler's treatise that says Rule 6. It's not even that... Professor Gensler argues that it's not only there's a conflict and that Rule 16 beats Rule 6. Professor Gensler has an argument that your friends quote that says Rule 6 literally doesn't even apply in this situation. It would not apply even absent Rule 16. What do you say to that? I think the professor reads a lot where there's just silence. You know, I'll give it to the professor that whenever Rule 16 was really sort of, I think, revamped in like the 80s, that there wasn't anything said about Rule 6 and how this might apply. But I do think, you know, when we're looking at the rules themselves, we should really look at the context of the rule as opposed to, you know, what a professor said. And I would also say the professor, you know, in that quote, you know, I will give my colleagues credit, if the professor said there aren't arguments to the contrary that Rule 6 should apply here instead of Rule 16. And I don't think if the court says that, you know, Rule 6 applies to these expert witness disclosures, that that means that, okay, well then Rule 6 applies anywhere. I think that sort of the distinction a lot that can be made between expert witness... This is how you're going to try to distinguish a nurse. I think it's a difficult task. It's what I'm going to try to do with it. I think that here, you know, Rule 26 sets out those initial deadlines of, hey, you've got to put your expert down at least 90 days before trial. And that's found in Rule 26. And so I think that Rule 6 sort of relates, not only is it more specific in when an act may or must be done, but I think also it sort of points more generally to the rules and to the fact that, hey, if you're going to have an expert, we know sometimes you need one. This is when you have to have it. And I think Rule 16 would, of course, still apply to several deadlines, especially anything where there's not a deadline already set under the rule. So if you've got a mediation deadline, if you've got, you know, other sort of disclosures like Valbert motions or, you know, dispositive motions... Wait, wait, wait. So your view now is that some deadlines in a scheduling order are governed by Rule 6 and some are governed by Rule 16? I think it's at least possible... That just seems like a recipe for utter chaos. I think it's at least possible, if you haven't missed that deadline yet, that Rule 16 may be the operative rule for an extension. If you have missed a deadline, then I do think that Rule 6 is probably going to be the most operative rule because it does deal with, you know, when an act must or may not have been completed and, you know, now we're past that deadline. And just to clarify, both Rule 6 and Rule 16 both require good cause, right? They both require good cause. I think that the big distinction between Rule 6 and Rule 16 is, I think that Rule 16, I think ultimately they look at the same factors. I think that the reason for the delay, which I think is also what courts call diligence, I think that factor under Rule 16 is just a little bit more emphasis placed on it as opposed to when you're in Rule 6 land. Now, I do think that most of the cases that the other side cites as far as, you know, hey look, here's another order, here's another court, here's another court, you know, sort of saying no abuse of discretion, I think a lot of those cases are factually different than Mr. Eichen's. The closest one to Mr. Eichen is the NRA Lone Star case. So can I, before you start parsing these cases that are not controlling on us, is your answer to Judge Rushing's question that you think the words good cause mean different things in Rule 6 and Rule 16? I think that Rule 16, well, I feel like this is a yes-or-no question. Do you think the words good cause mean different things in Rule 6 and Rule 16? I think they mean the same thing, Your Honor. I think there's other language within Rule 6 and within Rule 16. I just don't know where, because you make this argument that Rule 6 isn't, the state of assumption of your brief is that Rule 6 is a more friendly standard to you and it's not at all clear to me textually why it's not a harder standard for you because Rule 16 only says good cause, whereas Rule 6 says good cause and excusable neglect. And I guess sort of elementary logic to me would say if you have to satisfy X and Y, that's a more restrictive standard than saying you have to satisfy X. I think the way that we're thinking about it, you know, is, you know, you do have the excusable neglect in Rule 6. Right, but you don't even get to excusable neglect if you don't have good cause. But I think sort of distinguishing between the standards and Rule 16, it also has to, you have to satisfy, you have to have the judge's consent. And so I think that, you know, here, you know, I think that arguably the district court's already sort of ruled on it, you know, he has not granted that, and so we would think that Rule 6 would be the more operative rule. I see my time's expired. We'll hear from the appellee. Appellees, plural. Yes, Your Honor. Thank you so much. May it please the court, my name is Matt Bogan. I'm here on behalf of the Ethicon Defendants. If I might, just for a second, start and take a look at the factual conclusions that were clearly correct. The first hurdle that's thrown in the way is the language of Rule 16 that says good cause. The second hurdle that I see for my brother at bar is record page 288, paragraph 4, where they admit they knew the model number and the product ID for the stapler. I would also, as I'm going around the track in time sequence, I would next go to the December 11th, 2023 email from my law partner to the plaintiffs, and attached to it were some screens that look like this. This is at 571. Page 575 of the record has the actual product number. This is December 11th, again, the date they admitted to the district court knowing about it. It has the product number for the circular staple that was used in the plaintiff's surgery. Again, going a little further to the quarter mile around the track, I would get to January 11th. Dr. Baltman, who was the operating surgeon at Grants Grand Regional, he testified on January 11th, without a doubt, Judge Rushing, to your earlier questions, about the use of a circular stapler at this place where there was the leak later. There was only one circular staple identified on December 11th in these screenshots, which was ours, the 33 millimeter with the product ID number. So when Dr. Baltman's testifying about a circular staple at JA 215, 13, 14, 15, and 16, he's talking about our stapler that he used. It's correct that Kodland was still a defendant in the case, but they were not identified in the December 11th email. So there was no doubt in the questioning there of that doctor what circular staple was used at this site, as soon as December 11th, no doubt by January 11th. And then you go to Dr. Clatterbuck's deposition January 24th, also talking about the stapler. So those are four hurdles going down the track. I could go further to say that a practical point that I would make, I think Judge Curry, in a case called Kirby, made this point. And Judge Heitens, you kind of alluded to this earlier. You've got an expert disclosure deadline that at JA 56, Judge Dawson says, the use of discovery, closure, and dates and deadlines for disclosure of experts are important tools for case management. So that's on the notice to counsel at the very inception point of this case. You've got the discovery disclosure deadline for experts, product ID February, March experts. Discovery doesn't close until July. So practically speaking here, and Judge Rushing, I think you hinted at this earlier, you've got other things happening at the case. Well, what happens here is after the discovery, expert disclosure deadline is missed in March, no further discovery is conducted. They served discovery in February, which we answered. Our answers weren't due until after the expert disclosure deadline. And they served that the day after the product, they were required to identify the product, right? Correct, Your Honor. And then they didn't, and the next day served discovery requests to maybe find out some answers to these questions. That's right. Answers to the questions, they already had the information that they could have answered themselves, is what I would contend. But, you know, here they just didn't. Whether they actually knew it or whether they had the information, their access, I can't jump into their minds. But I would say, Your Honor, with respect to the discovery, yes, we then, my point was this, Your Honor, when we served our discovery response on March 18th, we identified employees, the salespeople, Mr. Heil and Mr. Dubose, that sold these products down to Grand Strand. So they had other information. They didn't attempt to take any depositions. Again, another hurdle on the track. And another one that I would get to is very curious, and not to pick on my brother at bar who is new to the party here, JA 682 through 688 are emails. I've never seen this before, but they're internal emails among plaintiff's counsel, where after we send our discovery responses in November of 2023, they say, hey, let's file a motion to compel. And then there's emails that reemerge in April of 2024 say, hey, bud, what about the motion to compel? And no motion to compel was ever filed. I mean, they represented to Judge Johnson. They had. They might have thought about it. But no motion to compel was ever filed in this case. So what was happening, why it was happening, I don't know. I just know they missed two deadlines. Product ID deadline when they knew the product. They missed their expert disclosure deadline. And then after that, they didn't conduct any further discovery or take any efforts to make any motions. And I think, I don't, there's not a question in my mind about what standard applies, even though, I guess if I had to admit, the Rule 6 standard would be probably much harder for him. But Rule 16 clearly says good cause. It's in the rule, right? I don't have any doubt. You know, we've got the Nurasan case was kind of the inception point for this circuit where we start citing the KMAC case from the 8th Circuit. And kind of feeding through there, there are probably a dozen cases cited in our briefing, including the tally and the fault. Can I ask you about the Nurasan case? I mean, sure. Do you think that case just resolves it? Or do you think, I guess I'll just tell you, I think, that there's a meaningful difference between Rule 15 and Rule 16? Judge, that's a good question. I don't think there is. But if there is, I would cite to you the Southern versus Bischoff case, which is. Why don't you just tell me what you think the distinction is rather than tell me what some other court said they think the distinction is? Oh, it's our court that I'll cite, Your Honor. But I don't think there's a distinction at all. But why not? Because Rule 15 actually has two questions. Like, question one is, should I let you file an amended complaint? And if I let you file an amended complaint, can that complaint survive? Whereas the question here is just, should I let you change the deadline? Those seem like, again, the case is definitely good for you. I'm not saying that I think it's good. It's certainly better for you than it is for them. But I'm just not sure that it actually just resolves this question. Fair enough. And I don't mean to dodge that question. I can see a distinction being made. I don't think one exists in the case law yet. I think the answer is still the same, even if you make a distinction between a double-step process with Rule 15. But again, our circuit's decision, which is unpublished in Southern versus Bischoff, which is cited at page 15 of our brief, it was a use of expert affidavit, Your Honor. There was a doctor in that case named Eyalon in an asbestosis case where summary judgment comes after discovery is closed. The plaintiff supplements with an expert affidavit that goes to the moment, to the question, and the court says, I'm granting summary judgment, and I'm not considering that affidavit because it was late. It was after the discovery deadline. So I think that falls squarely here. And again, I don't mean to be cavalier and not. I could make a distinction. I think what you said, Judge Heitens, is entirely reasonable. Rule 15 expressly contemplates that you could lose a motion to dismiss and then say, please let me try to fix the thing that just led to you granting that motion. Like, Rule 15 expressly contemplates that you're allowed to do that. Yes, Your Honor. I do think it has a little more grace in it, if I may use that word. But you still have to make it through the good cause and be diligent, standard, I would think, which is the first gateway. Because when the professor from Oklahoma, Gensler, he talks about occupying the where you have to first get through that elevator bay to then get into the Rule 15 analysis, which our court does. And, Judge, candidly, it's obvious that most of these cases we cite are Rule 15 cases. And I think the only one that's not is the Southern case that I extrapolated a little bit for. So, I mean, if this court is writing a decision that makes a distinction, I still think the outcome's the same. But I could buy into there being distinction with Rule 15. But I don't think it matters. I think good cause still applies. And I can cite the Southern example using an expert affidavit after the deadline expired to bolster why the outcome should be the same. So, if arguably either test, the district court could have applied either test, why would it be, I mean, it doesn't seem to me there'd be an abuse of discretion to apply either. No, Your Honor, I don't think so. I think, and look, candidly, reading the briefs, the parties, I don't think knew what standard would apply either. But I think under either one we win. Let me, I mean, I think I've explained why, Your Honor, I think Rule 16 applies. But if you go through, tick through the four standards of Rule 6, if that's the test that's adopted, they can't meet that either. Because the first one has to do, as Judge Rushing cited, they both involve good cause and they both involve diligence. And there is no record of diligence before this court. And I think if you go back even to JA 288, Your Honor, which is their motion to amend the schedule, which again, I know it was only 20 days late, but it was after the deadline expired. And after a motion for summary judgment. And after a motion for summary judgment. That wasn't the deadline. You could still have had more discovery. The summary judgment motion might have been early. But the courts don't take kindly to requests to change the record after a motion for summary judgment. Right, and we filed it intentionally then because they couldn't meet their burden without experts in this product case. But Your Honor, to your question, under either standard I think we would win. Because if you look through the four requirements under Rule 6, the first one again being diligence, they were the opposite of diligent. It also involves good faith. And I think, gosh, it's hard to say there's an absence of good faith. But there were some representations made in the record and even in this briefing that just weren't, they don't show good faith. And there would be prejudice to us. Judge Rushing hit upon this. We had filed our motion for summary judgment, expended money doing that. We didn't hire an expert because they didn't hire one. They missed the deadline. So all those elements we would meet, Your Honor, showing the prejudice. I think under Rule 6, if that's the court's test, the court adopts. I know the Thompson v. DuPont case is cited. That was a case where a party missed the Rule 4 appeal deadline. And there was an analysis of if you had moved for an extension of the jurisdictional deadline before it expired, it was a good cause standard. If it was after, it was an excusable neglect standard. And I think that's probably one of the things that Scott, my brother at bar, he talks about the expiration of the deadline and using Rule 6 then. I think that's inaccurate in light of Nurison and the other cases, Talley and Faulkner, Your Honor, Judge Rushing, those recent decisions on panels you were on. I think that's an applicable test. And I don't think there was any abuse of discretion by the district court in finding a lack of diligence and finding they knew the product very early on. And I can cite to four or five instances where they knew that as we're lapping around the track. And Your Honor, I don't, I know there haven't been any questions about this, but I don't want to sit down without highlighting the court granted a summary judgment, okay? The word summary judgment, I think is in the other side's brief, maybe once. They don't attack the independent findings of summary judgment. Well, they seem to concede that if they don't have an expert evidence that summary judgment would have been appropriate. Seems that way to me, but I haven't, they seem to concede, right? I haven't heard anybody concede that, but that may be the case, Your Honor. But I do think without an expert, they can't meet the standard and we would prevail. And I know this is not litigated in this case. I will say one of my immediate questions is, is it immediately obvious that that even applies in federal court under Erie? But I think that's just totally unbriefed in this case. It's unbriefed in this case, Your Honor. Okay. But are you aware of this? The district court just seemed to treat that as if it obviously applies in federal court. Has this court ever held that this statute applies in federal court? I don't think so, but if we have, I'd like to know. Not that I've found, Your Honor. I don't think so. Is it within the knowledge of the average juror how a circular stapler works and whether this was designed appropriately? It would not be, Your Honor. You'd have to have an expert, whether a particular statute applies or not, right? Right. And, Your Honor, that's right. You would need an expert to that point. And going to the stapler, Your Honor, one thing I forgot to mention, should there be any doubt, if you would, at page 575, if you googled the product number, a picture of what it looks like comes up. I mean, it looks kind of like the lighter you light a fire with or candles that has the trigger on it for your birthday cake or whatever. That's kind of what the device looks like. It has staplers in it. It's a laparoscopic procedure. It has to be inserted in the body. And there's a tactile feeling when you staple the two ends of the colon to the rectum. So you haven't chosen to discuss it this morning, but you've raised it in steel company. So you've argued we don't have a pallet jurisdiction. Can you walk me through that? Because I don't think we can actually just not say anything about it. Whether we think that argument's right or wrong, we do have to say something about your argument that we don't have a pallet jurisdiction. Yeah, Judge Heitens, I think this ruling is clearly merged after the ruling of summary judgment. So it's a final order. My probably inarticulate way of attacking this is that they don't brief. So I think I have to say the court has jurisdiction, right? But I think they have not fairly- And the reason we do, just to be clear, is because this order that leads to the district court granting summary judgment in favor of your client is obviously a final decision under 28 U.S.C. 1291. Yes, Your Honor. And my attack is more on the compliance with Rule 28, I guess, A7 and 8 about the contentions. But to Judge- But that would be forfeiture at best or waiver, but that's not jurisdictional. Your Honor, and I agree with you. And the court does have jurisdiction. So I will remove those remarks from my brief. On the jurisdiction question, where are your clients incorporated and headquartered? Your Honor, I think Ohio, I don't have that in front of me. It's clearly with our briefing. I'm embarrassed to say. I know the- I couldn't find it anywhere. LLC. The LLC is the manufacturer of the product. The incorporated is the design and marketer of product. And Your Honor, I know that the relevant folks were in Ohio. And I apologize, Your Honor, for not having that ready in my memory. And it seems to be undisputed that the plaintiff is a citizen of South Carolina and South Carolina only? That is my understanding, Your Honor. And that's all I had planned to present to this court. If there are other questions, I'd be happy to answer. But from my perspective, I would ask this court to affirm, find no abuse of discretion, and apply Rule 16, the good cause standard, find the plaintiff didn't meet it, and affirm the summary judgment ruling in my client's favor. Thank you very much, Your Honors. Thank you. We'll hear from Mr. Windham on rebuttal. Just a few points on rebuttal. I think the jurisdiction argument has sort of been put to rest. I'm more than happy to get into our arguments on that. But my understanding is they've withdrawn that jurisdiction argument that this court- that we didn't appeal for the final judgment. I think ultimately, you're right, Judge Rush, without that motion to extend the deadline, if that doesn't get granted, I think we're dead in the water. And I think we would concede that it is a complicated products case. Under South Carolina state law, you can bring a RESPSA-like products case if you have the scalpel left in the stomach and how in the world did it get there. But under the facts, as I understand it in this case, Mr. Eichen has to have an expert. And if he doesn't, then he's just dead in the water. There's no way for him to prevail on his claims, specifically sort of the causation element of those product defects claims. I do want to talk about the email that my colleague brought up. Because I do think one of those attachments to that email does identify the actual product number. But if you'll look at that email that begins at J, I think it's 326. There are five different attachments that are a part of that email. And the original email is from Will Thomas, counsel at Grand Strand Regional Medical Center. And it's forwarded with very little information. It pretty much just says, hey, we think you guys are the manufacturer. And then that's pretty much the same thing that's forwarded on to Mr. Eichen's counsel. I don't think at this point the fact that one of those five staplers was a stapled issue just answered all the questions. I do think there's maybe sort of another question that follows up. Well, you've got it narrowed down to five. Why don't you do anything after that? And I think that the answer from trial counsel would be, one, I don't think that, I think experts are extremely expensive. And the staplers themselves, if you look, I think it's the first attachment to that email. Some of those staplers cost up to ten thousand dollars. I think that the expert's going to need to get a, usually what they do is they will buy one of those staplers. And then they will perform various tests on it. And I think here you're looking at, okay, are we going to tell the expert witness, hey, here are five different staplers. We want you to go out, buy all five, start preparing an expert report on all five of those. I think it would have just been prohibitively expensive. And I think at the time of getting this email, Mr. Eikens' counsel really thought it was almost like an out-of-the-woods moment where, hey, we've gotten some movement. We finally know that it's an Epicon stapler. In early January, they dismissed the Covidian and Medtronic defendants. And so I think they were thinking that, hey, this thing's finally moving on. We're going to keep talking with Grant. Keep saying finally moving on. I mean, this sounds like when you think that people are stonewalling you or not getting back to you, what you do is you file a motion to compel. You don't just blow deadlines. I agree with you, Your Honor. I think maybe the thought process was that they didn't quite need one because it was sort of like they kept thinking they were getting closer and kept thinking they were getting closer. And so they didn't quite think. And I think part of it, too, was it was almost like, I think especially with Grand Strand, more of an issue of it doesn't seem like they're withholding things from us. It just seems like they're having real difficulties finding who at Grand Strand Regional Medical Center would know this information and where are those files. And I think it is sort of kind of, I think, a little bit of a backlog from kind of, you know, the craziness of COVID within the hospitals. At least that's what I've been told is sort of why it kind of Grand Strand maybe didn't have everything that they needed to go with that. As far as sort of any discovery after the motion for summary judgment was filed, you know, I think in a perfect world if I knew that it was going to take six months, you know, we would have, you know, of course went and we would have kept going on discovery until the district court said or they moved to say, hey, stop doing discovery on this. Stop trying to find out. I think that the hope was the district court was going to rule on these motions pretty, you know, because it was ultimately a, hey, you either get more time and, you know, then you can go try to prove your claims or you don't get more time and then, you know, if we don't have an expert, then there's nothing to do. I do think if you look at the factors that the district court would have looked at, you know, I 100 percent, there's really no reason for going past that deadline. You know, it was deadline in the scheduling order that we did know about. But I do think if you look at, you know, there were things that were done both before that deadline and I think at the same time. And so I think for the district court to say, you know, that Mr. Eichen wasn't diligent, I think it's just a misunderstanding of the record. I also think when you look at sort of the other factors, I think they counsel in our favor, especially if you look at the prejudice to the other side. You know, I get it, they did file a motion for summary judgment and that's certainly cost they've expended. But at the same time, it's not like they can't go ahead and do discovery. They can still hire their own expert in the case. Where this case sort of stopped was really right in the middle of discovery, right when experts were about to start being disclosed and then they would be deposed and you'd be going back and forth on their expert reports. It's not a situation where you find in a lot of the cases where it's, you know, four months, five months, eight months past the deadline. Sometimes it's, you know, a motion to amend a plenty to add a new party or a new claim in defense. I think the prejudice is much less than those other cases and so for those reasons, we'd ask that you please reverse the district court's order granting summary judgment and deny Mr. Eichen his motion to extend that deadline. I'm going to remain with instructions to allow Mr. Eichen additional time to name an expert. Thank you. We thank both of you for your arguments. We will come down.
judges: Allison J. Rushing, Toby J. Heytens, Nicole G. Berner